IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | FACTUAL BASIS |
| | : | |
| v. | : | |
| | : | |
| INTERNATIONAL LABOR MANAGEMENT | : | |
| CORPORATION | : | 1:14CR39-3 |

NOW COMES the United States of America, by and through Ripley Rand, United States Attorney for the Middle District of North Carolina, and as a factual basis under Rule 11 of the Federal Rules of Criminal Procedure, states the following:

**BACKGROUND**

INTERNATIONAL LABOR MANAGEMENT CORPORATION ("ILMC") is a corporation organized under the laws of the State of North Carolina with its headquarters and place of business in Vass, Moore County, North Carolina, in the Middle District of North Carolina. At all times material herein, ILMC was in the business of preparing and submitting petitions on behalf of client companies to the United States government for temporary alien workers under the H-2B Visa program and the H-2A Agricultural Visa program.

CRAIG STANFORD EURY, JR. ("Eury") founded ILMC in 1994. Eury held the primary ownership interest in ILMC. Prior to April 2008, Eury was the president of ILMC. From April 2008 to

the present, SARAH EURY FARRELL ("Farrell") was the President of ILMC. In this role, Farrell maintained her office and place of business at the offices of ILMC in Vass, Moore County, North Carolina, in the Middle District of North Carolina. Prior to April 2008, Farrell was the Vice President of Operations of ILMC and worked under the direction of Eury.

## THE H-2B VISA PROCESS

The H-2B non-agricultural worker program is administered by the United States Department of Labor and the United States Citizenship and Immigration Service. The H-2B program allows United States employers to fill specific temporary nonagricultural jobs. For an employer to qualify for H-2B non-immigrant classification, thereby allowing foreign nationals to work for that employer, the employer is required to establish that:

a. the need for the alien workers services or labor is temporary, regardless of whether the underlying job can be described as permanent or temporary. The employer's need is considered temporary if it is a one-time need, a seasonal need, a peak load need, or an intermittent need;

b. there is not a sufficient number of United States citizen workers who are able, willing, or qualified and available to do the temporary work; and

2

c. the employment of H-2B alien workers will not adversely affect the wages and working conditions of similarly employed United States citizen workers.

The H-2B Visa program carries a statutory numerical limit, or "cap," which provides that no more than 66,000 aliens may be issued a H-2B Visa classification during any fiscal year.

Before requesting H-2B classification from USCIS, an employer seeking H-2B workers must first submit an Application for Foreign Temporary Labor Certification, known as a Form ETA-750 (prior to January 2009), or as ETA-9142 (after January 2009), to the Department of Labor. The completed ETA-750 or ETA-9142 must describe the number of jobs to be filled and the specific nature, dates, and location of the jobs that the H-2B workers will perform in the United States. The employer must demonstrate in the ETA-750 or ETA-9142 that it has conducted recruitment efforts in the geographical area of proposed employment and has not found United States citizen workers willing to perform the work set forth and described in the ETA-750 or ETA-9142 at the prevailing wage for that area. After review of the ETA-750 or ETA-9142, the Department of Labor issues a Final Determination Letter indicating whether an employer's application has been approved or denied. This certification may not be transferred to another employer.

Both the ETA-750 and the ETA-9142 require that the employer certify under penalty of perjury that the information provided is true and accurate. The Department of Labor relies on the factual accuracy of the ETA-750 and ETA-9142 in making the determination whether the application is approved or denied. In this regard, the Department of Labor relies on the signature of the employer certifying that the ETA-750 or ETA-9142 is true and accurate. The Department of Labor will not review or approve an ETA-750 or ETA-9142 that is not certified by the employer under penalty of perjury.

After the Department of Labor has issued a Final Determination Letter certifying an employer for use of H-2B workers for specified jobs and job locations, the employer must submit a Form I-129, "Petition for Nonimmigrant Worker," with USCIS to obtain approval for issuance of H-2B Visas. As with the ETA-750 and ETA-9142, the Form I-129 requires the employer to describe the number of jobs to be filled, the number of H-2B Visas requested for alien temporary workers, and the specific nature and location of the jobs that the H-2B workers will perform in the United States. The employer must attach the certified ETA-750 or ETA-9142 to the I-129 petition.

The Form I-129 requires that the employer certify under penalty of perjury that the information provided is true and

4

accurate.  USCIS relies on the factual accuracy of the Form I-129 in making the determination of whether the application is approved or denied.  In this regard, USCIS relies on the signature of the employer certifying that the Form I-129 is true and accurate.  USCIS will not review or approve a Form I-129 that is not certified by the employer under penalty of perjury.

Upon USCIS approval of a Form I-129, USCIS issues an approval notice informing the employer that its petition has been approved and the H-2B Visas may be applied for at the United States Consulate.

The actual H-2B Visa is issued to the alien worker after approval by the United States consulate just prior to the alien workers entering the United States.  The H-2B Visa bears the following information:

 a. The name and picture of the alien worker;

 b. The I-129 petition number under which USCIS approved issuance of the H-2B Visas; and

 c. The name of the employer for which USCIS approved issuance of the H-2B Visa and for whom the alien worker is authorized to enter the United States and work for at the location and the times set forth in the Form I-129 and approved by USCIS.

5

H-2B workers who are already in the United States may change employers only if the new employer files a new Form I-129 with USCIS. The H-2B workers may not begin work with a new employer until the new Form I-129 is approved by USCIS authorizing the client workers to change employers.

An employer who employs H-2B workers must notify USCIS if the employment ends more than thirty days before the end of the approved employment term.

The H-2A agricultural worker program is administered by the United States Department of Labor and USCIS. The H-2A program is similar to the H-2B program for non-agricultural temporary workers in that it allows employers to obtain alien workers for specific temporary agricultural jobs. The application process for the H-2A program is generally similar with the exception that there is no cap on H-2A Visas.

## IMPROPER BUSINESS PRACTICES OF ILMC

ILMC, through its officers and employees, falsely petitioned for and obtained extra H-2B Visas above and beyond the actual needs of their client employers for the purpose of creating pools of extra Visas. ILMC falsely obtained and used such falsely obtained extra H-2B Visas for the financial benefit of ILMC, by fraudulently allowing employers who could not otherwise obtain H-2B Visas due to the operation of the cap to

6

use the H-2B Visas to bring alien workers into the United States under the pretense they were going to work for the employer for whom the H-2B Visas had been approved, and by allowing ILMC to obtain H-2B Visas prior to the cap being reached, thereby denying such H-2B Visas to other employers or competing agents.

ILMC falsely and fraudulently represented to the Department of Labor and USCIS that their client employers had jobs for H-2B workers in greater numbers than actually needed by the client employer.

ILMC, through its officers and employees, falsely and fraudulently instructed clients that they needed to petition for H-2B Visas above and beyond their actual needs. ILMC would then fraudulently use the extra H-2B Visas to enter alien workers into the United States for other client employers.

ILMC charged client employers based on ranges of numbers of H-2B Visas sought rather than actual numbers sought (for example, ILMC had one charge for between one and ten Visa rather than one per petition charge for each of seven Visa petitions), thereby encouraging client employers to seek more H-2B Visas than was necessary and to petition for numbers of H-2B Visas in excess of their actual needs.

ILMC, through its officers and employees, agreed with an ILMC client whose initials are S.P. that the client would create

7

"winter companies" that could obtain H-2B Visas under the pretense that workers were needed for winter seasonal jobs, such as snowmakers. These "winter companies," however, were actually created for the purpose of obtaining H-2B Visas prior to the cap being reached and thereby facilitating the admission of alien workers into the United States in order to work in other spring and summer jobs.

Second, ILMC, through its officers and employees, prepared and filed Forms I-129 with false and misleading job descriptions for the purpose of inducing USCIS to approve H-2B Visa petitions.

Third, ILMC prepared and caused to be prepared false and fraudulent Forms I-129 purporting to "change" employers for alien workers admitted into the United States under H-2A Visas, although those alien workers had in fact never worked in H-2A positions and had been admitted to the United States for an H-2B employer under the false pretense that the alien workers were needed for H-2A jobs.

ILMC, used extra Visas obtained over and above the needs of employers by providing them to other client employers who were not able to obtain H-2B Visas due to the operation of the cap.

ILMC instructed alien workers to cross into the United States under the pretense that said workers would be working for

8

the client employer under whose name the "extra" H-2B Visas had been obtained, when, in fact the alien workers would be working with a different client employer, all in reckless disregard that those alien workers would be working in violation of their H-2B Visas in violation of law.

ILMC and its employees falsely and fraudulently informed client employers that it was legal for alien workers to be admitted into the United States as working for the client employer under whose name the extra H-2B Visas had been obtained if the alien workers worked for a token period of two weeks for said client employer.

ILMC encouraged this practice for the purpose of creating a record that alien workers had worked at the original petitioning client employer, thereby misleading the Department of Labor and USCIS that the alien workers had been admitted into the United States to work at their documented employment locations when ILMC intended at all times to have those alien workers admitted to the United States for another employer who was legally barred from obtaining H-2B Visas by operation of the cap.

ILMC, through its officers and employees, filed false and fraudulent Forms I-129 seeking changes of employer for H-2B workers fraudulently admitted to the United States under other employers' H-2B Visas, thereby falsely representing that the

9

workers were changing employers, when, in fact, then well knew, the alien workers had not worked for the original employers or had only worked for those employers for a token period to mislead USCIS and the Department of Labor. ILMC, through its officers and employees, filed these false and fraudulent petitions as a pretense to mislead the Department of Labor and USCIS and to conceal the fact that the workers had been admitted into the United States under the original employers' H-2B Visas in violation of law. ILMC, through its officers and employees, then charged the new employers for filing the "change" petitions, thereby allowing ILMC to profit twice by filing a second petition for the same alien workers.

ILMC required that client employers provide Eury or Farrell with permission to sign their officers' names to various documents required to be filed in the H-2B application process, including Department of Labor documents and Forms I-129. ILMC, through its officers and employees, did not inform client employers ILMC employees would place a false signature of the officers of client employers onto certifications made under the penalty of perjury, thereby falsely representing to the Department of Labor and USCIS that the officer had reviewed the document and certified that it was accurate under penalty of perjury.

ILMC, through its officers and employees, placed the false signatures of the names of officers of client employers onto certifications made under the penalty of perjury on forms ETA-750 and ETA-9142 and Forms I-129, thereby falsely representing to the Department of Labor and USCIS that the petitions had been certified to be factually accurate by the petitioning employer, when, in fact, the client employer had not reviewed the petitions and the petitions often contained false and fraudulent representations, including inflated numbers of workers needed, false job start dates and incorrect job descriptions.

ILMC, through its officers and employees acting at their direction, failed to provide client employers with copies of Forms I-129 filed and prepared on their behalf by ILMC, even when client employers requested copies of the Forms I-129 for their records.

**LOUMAC, LLC (COUNTS 2-10) AND MILLER'S RESTAURANT (COUNTS 16-24)**

On or about April 1, 2008, ILMC, through its officers and employees, instructed an ILMC client whose initials are M.M. that he could avoid the operation of the H-2B Visa cap and obtain workers for Miller's Restaurant in Kill Devil Hills, North Carolina, by petitioning for H-2A agricultural Visas for the restaurant workers under the pretense that they were needed for agricultural work at a hunting farm in Fairfield, North

11

Carolina, owned by Loumac, LLC. ILMC, through its officers and employees, advised M.M. that the alien workers could then be transferred to H-2B Visas once they had entered the United States under the pretense that they were needed for farm work.

On or about April 2, 2008, ILMC filed, or caused the filing of by employees of ILMC, a Form ETA-750 on behalf of Loumac, LLC, falsely stating that ten jobs existed for alien workers at the Loumac, LLC, farm in Fairfield, North Carolina, when in fact the intent was to obtain H-2A Visas to allow restaurant workers to enter the United States.

On or about April 22, 2008, ILMC filed, or caused the filing of by employees of ILMC, a Form I-129, petition number WAC-08-144-54538, for ten H-2A Visas on behalf of Loumac, LLC, under the false pretense that such H-2A Visas were needed for alien workers at the Loumac, LLC, farm in Fairfield, North Carolina, when, in fact, the alien workers were never intended to work at the farm. By so doing, ILMC, for commercial advantage and private financial gain, did encourage and induce certain aliens, being aliens with the initials E.C.G., J.C.G., C.E.M., A.E.M., M.G.R., E.L.S., O.L.L., R.E.R.T. and O.T.M., to enter and reside in the United States by fraudulently obtaining H-2A Visas allowing them to be admitted to enter the United States under the false pretense that agricultural jobs existed for said

12

aliens in Fairfield, North Carolina. The aliens as described above were admitted into the United States pursuant to the H-2A Visas to work agricultural jobs in Fairfield, North Carolina, but were then directed by ILMC to travel to Kill Devil Hills, North Carolina, to work at Miller's Restaurant in violation of their H-2A status, knowing and in reckless disregard that the coming to, entry, and residence in the United States of the said aliens was in violation of law.

On or about June 3, 2008, ILMC, through its officers and employees, filed a Form I-129, petition number EAC-08-171-52508, on behalf of Miller's Restaurant falsely stating that the alien workers who entered the United States under H-2A Visas obtained under I-129 petition WAC-08-144-54538 were "changing" employers to Miller's Restaurant, when, in fact, they had never worked as farm workers and had been working out of visa status at Miller's Restaurant since entering the United States under the pretense that they were H-2A agricultural workers.

ILMC, for commercial advantage and private financial gain, did encourage and induce certain aliens, being aliens with the initials E.C.G., J.C.G., C.E.M., A.E.M., M.G.R., E.L.S., O.L.L., R.E.R.T. and O.T.M., to enter and reside in the United States by fraudulently obtaining H-2B Visas for said aliens, in that ILMC fraudulently represented to USCIS in Form I-129, petition EAC-

08-171-52508, that said aliens were changing employers from an alleged agricultural employer Loumac, LLC, Fairfield, North Carolina, using H-2A workers to Miller's Restaurant, Kill Devil Hills, North Carolina, when in fact, as ILMC then well knew, said aliens had never worked at the agricultural employer Loumac, LLC, but had instead been working in violation of their H-2A status at Miller's Restaurant, Kill Devil Hills, North Carolina, at the time of the petition and were not changing employers in any way, knowing and in reckless disregard that the coming to, entry, and residence in the United States of said aliens was in violation of law.

### SOUTHEAST WOODLANDS (COUNTS 11-15, 25-29, 39)

On April 28, 2008, ILMC, through its officers and employees, directed that five alien workers enter the United States using "extra" Visas obtained for Carefree Service Company, Boone, North Carolina, under the pretense that they were intended to work for Carefree Service Company in Boone, North Carolina, when, in fact, they were intended to work for Southeast Woodland Service, Inc., in Conway, South Carolina, which company was then barred by operation of the cap from obtaining H-2B Visas. ILMC, through its officers and employees, further directed that the alien workers proceed to work for Southeast Woodland Services, Inc., after working for a token

14

two-week period at Carefree Services Company to create the impression that the workers had actually entered the United States to work at Carefree Service Company. ILMC, for commercial advantage and private financial gain, did encourage and induce certain aliens, being aliens with the initials N.L.A.G., F.C.C., P.H.F.C., O.P.C. and J.L.C.P., to enter and reside in the United States by seeking the admission of the said aliens into the United States under H-2B Visas for Carefree Service Company, LLC, under the pretense that they would work as landscapers in Boone, North Carolina, for Carefree Services Company, when in fact, as ILMC then well knew, the aliens were actually intended to work as forestry workers at a different location and employer - Southeast Woodlands, Inc., Conway, South Carolina - knowing and in reckless disregard that the coming to, entry, and residence in the United States of the said aliens was in violation of law.

Again in December 2008, ILMC, through its officers and employees, directed that a further five alien workers enter the United States using "extra" Visas obtained for Woods Plus, Inc., Lugoff, South Carolina. ILMC, through its officers and employees, further directed that the alien workers proceed to work for Southeast Woodland Services, Inc., after working for a token two-week period at Woods Plus, Inc. to create the

15

impression that the workers had actually entered the United States to work at Woods Plus, Inc.

ILMC did encourage and induce certain aliens, being aliens with the initials J.M.S.B., V.H.A.F., O.P.C., V.M.I.D. and F.C.C., to enter and reside in the United States by seeking the admission of said aliens into the United States under H-2B Visas for Woods Plus, Inc., Lugoff, South Carolina, under the pretense that said aliens would work for Woods Plus, Inc., in Lugoff, South Carolina, and elsewhere, when in fact, ILMC intended that said aliens were to work at a different location and with a different employer - Southeast Woodland, Inc., Conway, South Carolina - knowing and in reckless disregard that the coming to, entry, and residence in the United States of said aliens was in violation of law.

On or about July 14, 2009, ILMC knowingly used false and fraudulent means to obtain, use and attempt to use H 2B non-immigrant Visas, to wit: five H-2B alien worker Visas for entry into the United States that ILMC then knew to be procured by means of a false statement, and otherwise procured by fraud and unlawfully obtained, in that ILMC submitted and caused to be submitted a Form I-129 for alien workers and attached a ETA-9142, in each of which ILMC claimed, and caused to be claimed, that five aliens were changing employment from Woods Plus, Inc.,

16

Lugoff, South Carolina, to Southeast Woodlands, Inc., Lugoff, South Carolina, when in fact, as ILMC then well knew, these five alien workers were admitted into the United States on "extra" H-2B Visas obtained for Woods Plus, Inc., Lugoff, South Carolina, for the purpose of working for Southeast Woodlands, Inc., Conway, South Carolina. With respect to the Form I-129 for alien workers and attached a ETA-9142 described above, ILMC placed and caused to be placed a false certification under penalty of perjury of the operator of Southeast Woodlands, Inc., whose initials are M.M., certifying that the Form I-129 for alien workers a ETA-9142 were true and accurate, when, in fact, M.M. had not certified the Form I-129 for alien workers and attached a ETA-9142 and the information contained in the Form I-129 for alien workers and attached a ETA-9142 was not true and accurate.

### HARBORSIDE MOTEL (Count 30)

On or about March 24, 2009, ILMC, through its officers and employees directed that an alien enter the United States using an "extra" Visa obtained for Silverwater Traders, LLC, in Ocracoke, North Carolina, under the pretense that the alien worker was intended to work for Silverwater Traders, LLC, when, in fact, the alien worker was intended to work as a hotel worker for Harborside Motel in Ocracoke, North Carolina, which company

17

was then barred by operation of the cap from obtaining H-2B Visas. ILMC, through its officers and employees, further directed that the alien worker proceed to work for Harborside Motel after working for a token two-week period at Silverwater Traders, LLC, to create the impression that the worker had actually entered the United States to work at Silverwater Traders, LLC.

ILMC, for commercial advantage and private financial gain, did encourage and induce a certain alien, being an alien with the initials M.F.Q.S., to enter and reside in the United States by seeking the admission of said alien into the United States under an H-2B Visa for Silverwater Traders, LLC, Ocracoke, North Carolina, under the pretense that the alien would work for Silverwater Traders, LLC, in Ocracoke, North Carolina, when in fact, ILMC intended for said alien to work at a different location and with a different employer - Harborside Motel, Ocracoke, North Carolina - knowing and in reckless disregard that the coming to, entry, and residence in the United States of the said alien was in violation of law.

### ARBOR LAWNS (COUNTS 34-37)

On or about December 16, 2008, ILMC, through its officers and employees, prepared and filed a Form I-129, petition number EAC-09-057-51033, for ten H-2B Visas on behalf of Arbor Lawns,

Inc., Orchard Park, New York, such petition bearing the false signature and certification of an officer of Arbor Lawns, Inc., whose initials are G.B., and falsely claiming that Arbor Lawns, Inc., needed ten alien workers, when, in fact, the company had need for only three alien workers.

ILMC knowingly used false and fraudulent means to obtain, use and attempt to use H 2B non-immigrant Visas, to wit: ten H-2B alien worker Visas for entry into the United States that ILMC then knew to be procured by means of a false statement, and otherwise procured by fraud and unlawfully obtained, in that ILMC submitted and caused to be submitted a Form I-129 for alien workers and attached a form ETA-750 in each of which ILMC claimed, and caused to be claimed, that ten aliens were needed to work and would work as landscape workers at Arbor Lawns, Inc., Orchard Park, New York, when in fact, as ILMC then well knew, jobs as landscape workers did not exist for the ten alien workers at Arbor Lawns, Inc., Orchard Park, New York, which company only had need for three alien workers. ILMC intended to take and send approximately seven of the alien workers who were admitted into the United States on the fraudulently obtained H-2B Visas to work for other ILMC clients for the gain and profit of ILMC. With respect to the Form I-129 for alien workers and attached form ETA-750, ILMC placed and caused to be placed a

forged and false certification under penalty of perjury of the operator of Arbor Lawns, Inc., whose initials are G.B., certifying that the Form I-129 for alien workers and attached form ETA-750 were true and accurate, when in fact, as ILMC then well knew, G.B. had not certified the Form I-129 for alien workers and attached form ETA-750 and the information contained in the Form I-129 for alien workers and attached form ETA-750 was not true and accurate.

ILMC thereafter directed that three alien workers enter the United States using "extra" Visas obtained for Arbor Lawns, Inc., Orchard Park, New York, without the knowledge of such company, under the pretense that they were intended to work for Arbor Lawns, Inc., in Orchard Park, New York, as landscape workers, when, in fact, they were intended to work for R.H. Loven Company as concrete plant workers in Pineola, North Carolina, which company was then barred by operation of the cap from obtaining H-2B Visas. ILMC further directed that the alien workers proceed directly to Pineola, North Carolina, without working for Arbor Lawns, Inc., in New York.

ILMC, for commercial advantage and private financial gain, did encourage and induce certain aliens, being aliens with the initials J.M.R.P., J.L.P.S. and T.P.S., to enter and reside in the United States by seeking the admission of said aliens into

20

the United States under H-2B Visas for Arbor Lawns, Inc.,
Orchard Park, New York, under the pretense that they would do
landscaping work, but then directing said aliens to travel to a
different location to work with a different employer - R.H.
Loven Company, Pineola, North Carolina - to do concrete work in
violation of their H-2B status, even though, as ILMC then well
knew, Arbor Lawns, Inc., had not authorized said aliens to enter
the United States and was not aware that these H-2B Visas had
been issued in its name, knowing and in reckless disregard that
the coming to, entry, and residence in the United States of said
aliens was in violation of law.

### R.H. LOVEN (Count 40)

On or about August 13, 2009, ILMC, through its officers and
employees after being instructed by an officer of R.H. Loven
Company whose initials are J.L. to petition for three alien
workers on behalf of R.H. Loven Company, filed, or caused the
filing of by employees of ILMC, a Form I-129, petition number
EAC-09-222-50165, which petition falsely stated that R.H. Loven
Company had jobs for ten aliens workers and falsely requested
that ten H-2B Visas be issued, such petition bearing the false
signature and certification of an officer of R.H. Loven Company
whose initials are R.L.

21

ILMC knowingly used false and fraudulent means to obtain H 2B non-immigrant Visas, to wit: ten H-2B alien worker Visas for entry into the United States that ILMC then well knew to be procured by means of a false statement, and otherwise procured by fraud and unlawfully obtained, in that  ILMC submitted and caused to be submitted a Form I-129 and a form ETA-750 in both of which ILMC claimed, and caused to be claimed, that ten alien workers were needed to work and would work at R.H. Loven Company, Pineola, North Carolina, when in fact, as ILMC then well knew, ten jobs for concrete workers did not exist for said aliens at R.H. Loven Company, and ILMC intended to take and send seven of said aliens who were admitted into the United States on the fraudulently obtained H-2B Visas to work for other ILMC clients for the gain and profit of ILMC, and otherwise retain the H-2B Visas for the own gain and benefit of  ILMC.  With respect to the Form I-129 for alien workers and attached form ETA-750 described above, ILMC placed and caused to be placed a forged and false certification under penalty of perjury of the operator of R.H. Loven Company, whose initials are R.L., certifying that the Form I-129 for alien workers and attached ETA-750 Application for Temporary Labor Certification were true and accurate, when, in fact, as  ILMC then well knew, R.L. had not certified the Form I-129 for alien workers and attached FORM

22

ETA-750 and the information contained in the Form I-129 and attached ETA-750 was not true and accurate.

### WINTERSCAPES (Counts 31-33, 38)

In June or July of 2008 an officer of ILMC met with an ILMC client whose initials are S.P. to discuss the creation of "winter" companies to allow S.P. and ILMC to bring alien workers into the United States prior to the operation of the cap. To achieve this goal, S.P. created a "winter" company, Winterscapes, LLC.

Sometime in either June or July 2008, S.P. contacted ILMC to determine how many H-2B Visas he could request for Winterscapes, LLC, for the purpose of entering alien workers into the United States prior to the operation of the cap. ILMC instructed S.P. that he could request as many workers as he wanted, as Winterscapes, LLC, was a start-up company. ILMC did not inform S.P. that he could only legally petition for alien workers that were actually needed for specific positions at Winterscapes, LLC, and which could not be filled with American workers. Based on ILMC's instructions, S.P. requested that ILMC petition for 150 snowmakers despite the fact that S.P. knew that jobs in North Carolina only existed for approximately twenty-five snowmakers.

23

On or about January 28, 2009, ILMC, for commercial advantage and private financial gain, did encourage and induce certain aliens, being aliens with the initials J.B.F., R.G.A.G. and J.M.B.A., to enter and reside in the United States by seeking the admission of said aliens into the United States under the H-2B Visas for Winterscapes, LLC, Boone, North Carolina, under the pretense that they would work as snowmakers in Boone, North Carolina, but then directing said aliens to travel to locations in South Carolina and Georgia to work as golf course workers in violation of their H-2B status, knowing and in reckless disregard that the coming to, entry, and residence in the United States of the said aliens was in violation of law.

On or about March 26, 2009, ILMC, through its officers and employees, prepared and filed a Form I-129, petition number EAC-09-124-50363, on behalf of Best Landscape, Inc., Myrtle Beach, South Carolina, falsely stating that sixty-six alien workers who entered the United States under an H 2B Visas obtained for Winterscapes, LLC, Boone, North Carolina, under the pretense that they would be working as snowmakers intended to work at North Carolina ski resorts, were "changing" employers to Best Landscape, Inc., to work as landscape workers, when, in fact, the alien workers had entered the United States for the

purpose of working for Best Landscape, Inc., and had either never worked for Winterscapes, LLC, as snowmakers in North Carolina or had worked for Winterscapes, LLC, for only a token period.

On or about April 6, 2009, ILMC knowingly used false and fraudulent means to obtain, use and attempt to use H2B non-immigrant Visas, to wit: sixty-six H-2B alien worker Visas for entry into the United States that ILMC then well knew to be procured by means of a false statement, and otherwise procured by fraud and unlawfully obtained, in that ILMC submitted and caused to be submitted a Form I-129 for alien workers and attached a ETA-9142 in each of which ILMC claimed, and caused to be claimed, that sixty-six alien workers were changing employment from Winterscapes, LLC, in Boone, North Carolina, to Best Landscapes, Inc., Myrtle Beach, South Carolina, when, in fact, as ILMC then well knew, these alien workers were admitted into the United States on falsely obtained H-2B Visas under the pretense that the alien workers would work for Winterscapes, LLC, Boone, North Carolina, when instead, as ILMC also then well knew, the alien workers did in fact work for Best Landscapes, Inc., Myrtle Beach, South Carolina, on golf courses in South Carolina and Georgia without working for Winterscapes, LLC, Boone, North Carolina. With respect to the Form I-129 for alien

workers and attached ETA-9142 described above, ILMC placed and caused to be placed a forged and false certification under penalty of perjury of an officer of Best Landscapes, Inc., whose initials are W.T., certifying that the Form I-129, petition EAC-08-196-51524, was true and accurate, when, in fact, as ILMC then well knew, W.T. had not certified the Form I-129, petition EAC-08-196-51524, and the information contained in the Form I-129, petition EAC-08-196-51524, was not true and accurate.

### MONETARY TRANSACTIONS (Count 41)

ILMC did knowingly engage and attempt to engage in a monetary transaction by and through a financial institution affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000.00, that is, the deposit, withdrawal, and exchange of funds as follows: the deposit of CareFree Management, Inc., check number 7853 in the amount of $14,000.00 into the account of ILMC at First Bank of Vass, and the transfer of $20,000.00, which included the $14,000.00 as described above, on October 23, 2009, to the First Bank of Vass account ending in 8260, being the ILMC payroll and federal withholding account, such property having been derived from a specified unlawful activity, to wit: visa fraud, in violation of Title 18, United States Code, Section 1546(a).

This, the 30th day of July, 2014.

                                   Respectfully submitted,

                                   RIPLEY RAND
                                   United States Attorney


                                   /s/ FRANK J. CHUT, JR.
                                   Assistant United States Attorney
                                   NCSB # 17696
                                   P.O. Box 1858
                                   Greensboro, NC 27402

                                   336/333-5351

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA          :
                                  :
               v.                 :
                                  :
INTERNATIONAL LABOR MANAGEMENT   :
CORPORATION                       :          1:14CR39-3

CERTIFICATE OF SERVICE

    I hereby certify that on July 30, 2014, the foregoing was filed with the Clerk of the Court and I will send notification of such filing to the following:

Joshua B. Howard, Esq.


                              /S/ FRANK J. CHUT, JR.
                              Assistant United States Attorney
                              NCSB # 17696
                              United States Attorney's Office
                              Middle District of North Carolina
                              P.O. Box 1858
                              Greensboro, NC  27402
                              Phone:  336/333-5351